# MUSCOGEE SUPERIOR COURT,

## OCTOBER TERM, 1842.

---

### THE STATE VS. WILLIAM POWERS.

*Burglary.    Verdict Guilty, and Motion for a New Trial.*

1st. When the principles of justice require that a new trial should be granted, the Court will look into the evidence, and decide upon the consideration it is entitled to.

2nd. Where circumstances of guilt are slight, in a high criminal case, the Court will grant a new trial.

The motion in this case is made on two grounds :—1. That the verdict is contrary to Law.    2. That it is contrary to Evidence. The bill of indictment contains two counts.    The first charges, that the defendant on the night of the fourth day of January eighteen hundred and forty-two, in the county of Muscogee, committed the burglary complained of, by breaking and entering the dwelling house of *James Sullivan* and *Mathew Brannon*, with intent to commit a felony.    The second count varies the accusation so far, as to charge the defendant with having actually stolen a fifty dollar treasury draft, and one hundred dollars in silver pieces of coin, consisting to a large extent of ten cent pieces, on the occasion of breaking and entering the house.    On the part of the State, *Mathew Brannon* proved the breaking and entering the house described, at the time and place mentioned, and also the loss of a fifty dollar treasury note and one hundred dollars in silver coin, but is not able to give any marks of identity of the treasury note or the coin, except in this, that the note was written on a piece of paper the back of which was of red complexion, and that the coin consisted principally of ten cent pieces.    He testifies, however, that the money was taken by the offender in a tin box that was deposited in a desk which was locked, and the key of which was placed on a shelf about three feet from the desk—that the desk was unlocked, not broken or forced, and that he

[The State vs. William Powers.]

had never seen the prisoner in his house until after it was broken,—that the prisoner was in the house the next day, drinking and treating, that he had in possession some ten cent pieces which were thrown upon the counter in the course of the day, and also had some bank bills, but witness saw no money which he recognized as that lost from the house the night before. *Sarah Ann Evans* proved, that a day or two after the house was broken, the prisoner was at her bar-room drinking, and exhibited some ten cent pieces, and also a bundle or roll of bank notes, among which she discovered one of a red complexion, which she took to be an Alabama bank note, but prisoner represented it to be a treasury draft, but witness did not have it in hand, nor did she see the face of it—was not able to identify the draft or paper in any way whatever. *Nathaniel M. C. Robinson* testifies, that he arrested the prisoner nine days after the perpetration of the offence, and prisoner at the time of the arrest admitted that he had exchanged, a day or two before the arrest, forty or fifty dollars in ten cent pieces for Central bank notes at ten per cent. premium, at Hamilton, Harris county, and the witness states, that at that time silver was worth a premium, varying from twenty-five to thirty five per cent. on Central bank notes, but that the prisoner submitted without resistance to be searched, and placed in custody, and asserted that he was innocent. The evidence on the part of the State was here closed.

On the part of the prisoner, it was proved by *John Dinsmore*, that the prisoner came in company with witness from Apalachicola, *Florida*, the last of July, that they both reached Columbus, Georgia, on the first day of August, that prisoner on his way up had money, and that a considerable portion of it was in silver coin, some of which was in ten cent pieces, that witness was with prisoner at the time prisoner was at *Mrs. Evans'*, as she has testified to, and saw nothing of the treasury draft, and did not hear prisoner speak of it, and that if he had spoken of it, witness thinks from the size of the room he would have heard it. *Sarah Dodson* testifies, in behalf of the prisoner, that on the night of the fourth of January last, prisoner went to bed at the house of *Mrs. Evans*, at nine o'clock at night, and did not get up until after sunrise the next morning, that prisoner could not have passed out of the house without unlocking a door, and passing through the room in which *Mrs. Evans* and others lay,

[The State vs. William Powers.]

and that *Mrs. Evans* knew the prisoner passed the night on which the crime was perpetrated at her house. This is the substance of the evidence on either side of the case.

The counsel for the prisoner do not complain of the verdict, except on the ground of its being contrary to the evidence. I am aware of the caution with which Courts of justice interfere with verdicts of Juries on the ground, simply, of their being unjustified by the evidence. The Law having selected and set apart Jurors to try questions of fact peculiarly, it is proper that their verdicts should not be disturbed as being opposed to the proof, except on the most careful consideration. Nevertheless, the office of superintending their verdicts, even in this respect, and of granting new trials when, in the opinion of the Court, they are demanded by justice, has been exercised from the foundation of the mode of trial by Jury. And the Courts are not at liberty to decline an investigation of the sufficiency of the testimony on which the verdict is rendered, on the motion of one alleging himself to have been injured by an erroneous finding. In approaching the evidence on the part of the prosecution in the case at bar, it is perceived that there is no proof whatsoever of a positive character, of the agency of the defendant in the breaking and entering the house. *Brannon*, who alone proves the burglary, leaves it entirely indifferent who perpetrated it—but it is observable that he leaves the case in circumstances that would lead us to conclude that the breaking and entering the house were perpetrated by some one familiar with the premises, and not by a stranger, as the prisoner appears to have been. The mode and place in which the money taken was kept, the location of the desk and the disposition of the key, all render it probable, if not absolutely certain, that he who committed the robbery must have been minutely acquainted with the exact situation and management of the room from which the money was removed—and to the extent to which this presumption operates, it favours the accused. Indeed, the counsel for the prosecution have placed their case upon the supposed possession, by the accused, of the money taken, subsequently to the commission of the crime, and his alleged failure to account for it. Had the very money that was removed from the house on the night of the burglary, been found in the possession of the prisoner immediately after the felony was committed, it would have been properly relied on before

[The State vs. William Powers.]

the Jury as cogent evidence against him, in the absence of an explanation by him as to the means by which he obtained it.

But the error of the argument, is, that the treasury note and the silver pieces spoken of by the witnesses as having been in the possession of the prisoner after the night of the fourth, and of which there is no other proof than his own gratuitous admission, are not identified by any one as having been those that were taken from the house that was broken and entered. By whom has this been shewn? Certainly the naked facts, that the prisoner had in his hands a fifty dollar treasury note a day or two after the burglary was committed, and forty or fifty pieces of silver coin in ten cent pieces nine days thereafter, and that the latter may have been passed at a lower than the usual rate of exchange, are not sufficient in themselves to convict him of the high crime with which he is charged. I leave out of view, for the present, the evidence on the defence, for the prosecution clearly fails on its own shewing. Certainly this cannot be the strong and cogent proof of guilt, which, in the language of the Law, must run so high as that it leaves no reasonable doubt on the mind, to authorize a conviction. If we turn to the defence, we find the evidence here, it is true, of not a very satisfactory nature, but it certainly does detract something from the strength of the prosecution, too weak in itself for conviction.

The very character of the charge, it should be observed, is one that it is often difficult to disprove, if false even. On the supposition, however, that the *onus probandi* were reversed; in other words, were transferred from the State to the prisoner, and he were called upon to prove his innocence, the case is quite as well made out for him as is the prosecution. The grave nature of this charge, the highly penal consequences following conviction, and the very meagre and unsatisfactory nature of the testimony in this case, require that the case should be submitted to the consideration of another Jury.

Motion for a new trial granted.

MARSHALL J. WELLBORN, J. S. C. C. C.